# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JOANNA BURKE and JOHN BURKE,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-4544** |
| | § | |
| **OCWEN LOAN SERVICING, LLC,** | § | |
| | § | |
| *Defendant.* | § | |

## OCWEN LOAN SERVICING, LLC'S
## MOTION TO DISMISS PLANTIFFS' ORIGINAL COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Ocwen Loan Servicing, LLC (hereinafter "Ocwen"), files this Motion to Dismiss in response to Plaintiffs' Original Complaint ("Complaint") [Doc. 1-3].   In support of the foregoing, Ocwen would respectfully show the Court the following:

## I.
## SUMMARY

1.      Ocwen is the mortgage servicer for Deutsche Bank[1]  with respect to home equity loan taken out by Joanna and John Burke (hereafter "Plaintiffs").   Deutsche Bank and Plaintiffs have been embroiled in contentious litigation since 2011, the litigation being over the foreclosure of the Burkes' home equity security instrument.   The Burkes asserted that the home equity loan was fraudulent, and that Deutsche Bank (and its lawyers) were all scoundrels.   In reversing the trial court's judgment, and thereafter rendering judgment in favor of Deutsche Bank on its judicial foreclosure claim, the Fifth Circuit held, "Given nearly a decade of free living by the Burkes, there

---

[1] Deutsche Bank National Trust Company, as Trustee of the Residential Asset Securitization Trust 2007-A8, Mortgage Pass-Through Certificates, Series 2007-H under the Pooling and Servicing Agreement Dated June 1, 2007

is no injustice in allowing that foreclosure to proceed." *Deutsche Bank Nat. Trust Co. v. Burke*, 902 F.3d 548, 552 (5th Cir. 2018).

2.        Now that the seven-year litigation with Deutsche Bank has all but resolved, the Burkes are attempting to continue the fight by suing Ocwen, the servicer of the loan at issue, as well as Deutsche Bank's attorneys (in a separate lawsuit[2]). As pled by the Burkes in this lawsuit, Ocwen has breached its contract with the Burkes in charging excess interest on the loan, assessing improper force placed insurance, and misapplying payments made on the loan. See *Id.* at pp.'s 25-30.  Also, the Burkes plead that Ocwen has failed to comply with RESPA in responding to the Burkes' (post- Fifth Circuit Judgment) inquiries about their home loan. [Doc. 1-3, pp. 16-20].

3.        *Res Judicata.*  Plaintiffs' claims against Ocwen, stemming from the supposedly improper charges for forced placed insurance on the loan, and/or the misapplication of payments on the loan, and/or the inappropriate accrual of interest on the loan, are all barred by res judicata. Ocwen is the mortgage loan servicer for Deutsche Bank regarding the loan.  The Burkes have previously litigated their defenses to foreclosure against Deutsche Bank, and the prior trial court concluded "[T]he Burkes' remaining challenges to the foreclosure suit lacked merit."  Res judicata protects Ocwen from being forced to re-litigate the Burkes' compulsory counterclaims that were brought, or should have been brought, against Deutsche Bank in the first lawsuit.

4.        *RESPA.*  The Burkes want nothing other than to bait Ocwen and Deutsche Bank into repeated litigation to delay the foreclosure of the Burkes' Property.[3]  To that end the Burkes sent correspondence to Ocwen, after the rendition of judgment by the Fifth Circuit, purporting to be a qualified written request ("QWR") regarding the loan.   The Burkes filed this lawsuit as soon as Ocwen responded to the QWR and allege that Ocwen did not: (1) properly substantiate the

---

[2] *See*, *Burke v. Hopkins Law, et al.;* Civil Action 4:18-cv-4543.
[3] The real property commonly known as 46 Kingwood Greens Drive, Kingwood, Texas 77339 (the "Property").

validity of the loan, (2) did not provide the entire payment history on the Note, and (3) did not respond to the QWR timely.  The Burkes' purported QWR is fatally defective in that it fails to identify what specific information is sought beyond just a general inquiry about the loan.  Setting aside the defective QWR, Ocwen's response was both timely and legally sufficient.

5.      <u>Background Facts.</u>  The underlying facts, as previously analyzed by the Fifth Circuit in *Deutsche Bank v. Burke[4]*, remain unchanged.  On May 21, 2007, Joanna Burke executed a $615,000.00 Texas Home Equity Note (the "Note").  The Note is secured by a Texas Home Equity Security Instrument ("Deed of Trust"), which encumbers the Property.  John Burke joined in the execution of the Deed of Trust as he is also in title to the Property.  Despite receiving the benefits of the Note, Joanna Burke stopped making payments on or about January 1, 2010.  After years of litigation, wherein Deutsche Bank sought judicial foreclosure and the Burkes sought to have the loan invalidated, the Fifth Circuit granted Deutsche Bank's requested relief.  *Deutsche Bank v. Burke,* 902 F.3d 548, 552 (5th Cir. 2018).  The Burkes now attempt to re-litigate the issues with Ocwen despite Ocwen simply being the agent (mortgage servicer) of Deutsche Bank.

## II.
## ARGUMENT AND AUTHORITIES

### A.  <u>The Applicable Standard for a 12(B)(6) Motion</u>.

6.      To survive a Rule 12(b)(6) motion to dismiss, a complaint must include facts that "raise a right to relief above the speculative level," and into the "realm of plausible liability." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 and 1966 n.5 (2007).  Even though the complaint is to be construed liberally and in the light most favorable to the nonmoving party, a plaintiff must plead enough facts to state a claim that is at least plausible on its face. *Id.* at 1973-74.  Although

---

[4] *See* Plaintiffs' Complaint at pp 1 and 4 and *Deutsche Bank v. Burke,* 902 F.3d 548, 552 (5th Cir. 2018), which the Court can judicial notice and properly consider when deciding a motion to dismiss.  *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 2499 (2007).

detailed factual allegations are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)).  In addition, the Court can consider the allegations in the complaint, documents and materials referenced or central to the complaint, and matters subject to judicial notice.  *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 2499 (2007).  A complaint must allege enough facts to move past possibility and on to plausibility of "entitlement to relief." *Id.* at 1966. This standard is referred to as the "flexible plausibility standard."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

## B. <u>Res Judicata Bars Plaintiffs' Claims.</u>

7.      "Res judicata prevents parties <u>and their privies</u> from relitigating a cause of action that has been finally adjudicated by a competent tribunal." *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206 (Tex. 1999)(emp. added). "The rule of res judicata rests upon the policy of protecting a party from being twice vexed for the same cause, together with that of achieving judicial economy in precluding a party who has had a fair trial from relitigating the same issue." *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex. 1971).  Res judicata also serves to "[t]o prevent causes of action from being split, thus curbing vexatious litigation and promoting judicial economy." *Casterline v OneWest Bank, FSB,* 2018 WL 1755821 (Tex. App. - Corpus Christi 2018); *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206–07 (Tex. 1999).

8.      "Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments. Within this general doctrine, there are

two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). Res judicata, or claims preclusion, prevents the re-litigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. Issue preclusion, or collateral estoppel, prevents re-litigation of particular issues already resolved in a prior suit." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992) (internal citations omitted).

9.      Res judicata (claim preclusion) requires (1) a prior final judgment on the merits by a court of competent jurisdiction (2) identity of parties or those in privity[5] with them; and (3) a second action based on the same claims that were raised of could have been raised in the first action. *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex. 1996). All three elements apply to Plaintiff's lawsuit.

10.      The doctrine of res judicata addresses the conclusive effects of judgments. *Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 679 (Tex.1982). The general principle of res judicata is simple: a party may not dispute a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction in a prior suit as a ground of recovery or defense in a later suit between the same parties. *Marange v. Marshall,* 402 S.W.2d 236, 239–40 (Tex. Civ. App.— Corpus Christi 1966, writ ref'd n.r.e.). Res judicata also bars a party from litigating matters in a

---

[5] For purposes of res judicata, "[p]eople can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996) (citing res judicata as an exception to the general rule that a person is not usually bound by a declaratory judgment action in which the person was not a party).

The elements of issue preclusion are similar to claim preclusion: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst,* 90 S.W.3d 268, 288 (Tex. 2002). Under either doctrine, Plaintiffs' lawsuit would be barred.

later lawsuit **that it could have raised, but did not raise**, in a previous lawsuit. *Jeanes,* 688 S.W.2d at 103; *Abbott Labs. v. Gravis,* 470 S.W.2d 639, 642 (Tex.1971)(emp. added).

11.     If the Burkes had a dispute regarding the legality of the charges to the loan, then those issues were required to have been brought by the Burkes in connection with their other counterclaims in the first litigation.  A party's failure to assert compulsory counterclaims precludes that party from asserting them in later lawsuits. *Gray v. Kirkland,* 550 S.W.2d 410, 411 (Tex. Civ. App.— Corpus Christi 1977, writ ref'd n.r.e.); *see also Barr v. Resolution Trust Corp., ex rel. Sunbelt Fed. Sav.,* 837 S.W.2d 627, 629–31 (Tex.1992).  The test for determining whether a claim is a compulsory counterclaim is the "logical relationship" test. *Jack H. Brown & Co. v. Northwest Sign Co.,* 718 S.W.2d 397, 399–400 (Tex. App. —Dallas 1986, writ ref'd n.r.e.).  Application of this test requires that at least some of the facts surrounding the causes of action arise from the same transaction or occurrence. *Jack H. Brown & Co.,* 718 S.W.2d at 400. When the same facts, whether controverted or uncontroverted, are significant and logically relevant to the various causes of action, the "logical relationship" test is satisfied. *Id.*

12.     The Dallas, Houston [1st Dist.], and Eastland Courts of Appeal have all previously examined and held that a borrower's claims for improper handling of a home loan are compulsory counterclaims to a mortgagee's foreclosure action.  *See Williams v. National Mortg. Co.,* 903 S.W.2d 398, 404 (Tex. App. - Dallas 1995) (DTPA, breach of implied duty, wrongful foreclosure and trespass to try title all compulsory counterclaims to a foreclosure action);  *Jones v. First Nat'l Bank of Anson,* 846 S.W.2d 107, 109 (Tex. App.—Eastland 1992, no writ) (causes of action for breach of duty of good faith and fair dealing, breach of fiduciary duty, negligent misrepresentation, conversion, estoppel, and violations of the Deceptive Trade Practices—Consumer Protection Act are compulsory counterclaims to a suit on a note); *Lamar Sav. Ass'n v. White,* 731 S.W.2d 715

(Tex. App. - Houston [1st Dist.] 1987)(Even if a suit on the note and foreclosure are cumulative remedies, it does not follow that Meyerland may maintain independent suits with respect to each. By definition, the foreclosure arises from the alleged default on the note, and, in the instant case, each of Meyerland's claims in the Harris County suit was based on its allegations that the note was not in default because of Lamar's actions. Essentially, each remedy is dependent on an "inextricably interwoven" factual basis).

13.     Plaintiff's Original Complaint acknowledges that Ocwen is the agent of Deutsche Bank.  The Complaint provides, "Defendants are the alleged Mortgage Servicers for Deutsche Bank National Trust Company, who claim to service the disputed debt and are responsible for the accounting and administration of that debt." [Doc. 1-3, p.4].  Plaintiffs also admit the existence of the Final Judgment within their Complaint.  The Complaint provides, "It is clearly evident that the judgement of foreclosure is one of the main reasons Ocwen have delayed and refused to comply to the QWR." [Doc. 1-3, p. 20].  Plaintiffs' own pleadings establish that Ocwen is in privity with Deutsche Bank and prior judgment granting judicial foreclosure exists in Deutsche Bank's favor. Texas law also squarely provides that disputes over the amount due under the Note were compulsory counterclaims that should have been brought in the first litigation.  Given the foregoing, all of Plaintiffs' claims of servicing of the loan should be dismissed on the basis of res judicata.

**C.  Plaintiffs' RESPA Claim Fails.**

14.     Ocwen's Timely Response to the Purported QWR.  Plaintiffs allege Ocwen violated Section 2605(e) of RESPA for failing to make a proper response to Plaintiffs' correspondence regarding the dispute of debt. Section 2605(e) describes the duty of a loan servicer to respond to borrower inquiries and provides that if a "servicer of a federally related mortgage loan receives a

qualified written request [QWR] ... for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days ... unless the action requested is taken within such period." 12 U.S.C. § 2605(e) (1)(A).

15.     The Burkes mailed correspondence to Ocwen on September 13, 2018 via the United States Postal Service, the correspondence having tracking number 9410 8036 9930 0101 2519 07. The correspondence was received on September 19, 2018.   A true and correct copy of the correspondence referenced by the Burkes in their Complaint is attached hereto as Exhibit "A." Thereafter, Ocwen, knowing that the Burkes were represented by counsel in the ongoing Fifth Circuit litigation, provided the required acknowledgement letter to counsel for the Burkes on September 24, 2018.  [Doc. 1-3, p. 65].  The acknowledgement letter was provided within the five-day window permitted by 12 U.S.C. §1024.35(d).

16.     Thereafter, counsel for Ocwen received instructions from the Burkes' counsel for Ocwen to communicate directly with the Burkes regarding their "RESPA request."   See, *Correspondence from Counsel for the Burkes,* attached hereto as Exhibit "B".  Thereafter, counsel for Owen responded to the purported QWR on October 15, 2018.  [Doc. 1-3, p. 70].  The Response of October 15th was within thirty days of receipt of the incoming purported QWR on September 19, 2018.  As such, the Response was timely under 12 U.S.C. §2605(e)(2).  The Burkes allegations that Ocwen did not timely respond to the purported QWR are simply inaccurate.

17.     <u>Correspondence was not a Proper QWR.</u>  Ocwen asserts that the correspondence sent by the Burkes failed to qualify as a QWR, and no response was therefore necessary.  As provided by statute, to constitute a QWR, the correspondence from the borrower must enable the servicer to identify the name and account of the borrower, *include a statement of the reasons for the borrower's belief that the account is in error*, or provide sufficient detail to the servicer

regarding other information sought by the borrower. *Id.* § 2605(e)(1)(B)(emp. added).  However, without identifying any specific errors with the loan, the Burkes stated that the they have "reason to believe that your statements of the balance due, the charges and fees listed there-in and other related calculations are in error."  [Doc. 1-3, p. 60].  Then, instead of asking for specific information about the loan the Burkes instead asked for the production of every single document touching the loan from its inception to the present.  The exact request was, "To independently validate this debt, we need to conduct a complete exam, audit, review and accounting of our mortgage loan from inception until the present date." *Id.*

18.    The Burkes' letter taking issue with the "validity of the debt" simply isn't the type of correspondence that qualifies as a QWR.[6]  Ocwen is only required to respond to a purported QWR under RESPA to the extent the inquiry seeks "information relating to the servicing" of the loan. 12 U.S.C. § 2605(e)(1)(A); also see, *In re Parker*, 655 Fed. Appx. 993, 998 (5th Cir. 2016). RESPA defines the term "servicing" as "*receiving any scheduled periodic payments* from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the *amounts received from the borrower* as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3)(emp. added); *Hurd v. BAC Home Loans Servicing*, 880 F.Supp.2d 747, 768 (N.D. Tex. 2012) (citing 12 U.S.C. § 2605(e)(1)(A)); *Reed v. Litton Loan Servicing*, 2011 WL 817357 (E.D. Tex. 2011) (dismissing RESPA violation claim because the invalid QWR letter did not relate to "servicing" of the loan); *Allen v. Bank of Am., N.A.*, 2015 WL 1726986, (W.D. Tex. 2015) ("Courts have consistently held that a borrower's written demand for

---

[6] Despite the existence of the Final Judgment affirming Deutsche Bank's right to foreclose, Ocwen's response to the Burkes' correspondence included the Texas Home Security Instrument, Texas Home Equity Note, Assignment, and the loan history from 2010 to present.  [Doc. 1-3, pp. 71-102]

the production of certain loan documents does not relate to the 'servicing' of a loan, and therefore does not trigger a loan servicer's response obligations under [RESPA].").

19.     As noted by the Fifth Circuit in its Final Judgment, the Burkes have not made a payment on the loan since 2010.  That being so, there are no records Ocwen would be required to produce in response to a QWR from the Burkes because there has been no "*receiving [of] any scheduled periodic payments*" since 2010, and there has been no "making of payments of principal and interest ... *with respect to the amounts received from the borrower*."    See, 12 U.S.C. §2605(i)(3).

20.     The Burkes' correspondence does not qualify as a QWR for additional reasons as well.  First, servicing does not include the transactions and circumstances surrounding a loan's origination or the borrower's contractual relationship with the lender, including materials regarding the assignment or transfer of the loan. *Chambers v. Citimortgage, Inc.*, 2014 WL 1819970, at *3–4 (W.D. Tex. May 7, 2014) (collecting cases concluding that request did not relate to servicing).   Second, a letter that fails to identify an alleged servicing error or fails to provide an explanation for the reasons of the belief by the borrower regarding such error is not a valid QWR. *Turner v. Nationstar Mortg. LLC*, 2015 WL 4629584, at *7 (N.D. Tex. May 13, 2015), *report and recommendation adopted in pertinent part*, 2015 WL 4635760 (N.D. Tex. Aug. 4, 2015).

21.     No Showing of Actual Damages.  Even if the correspondence was determined to be a valid QWR (which Ocwen denies), to state a viable claim under Section 2605(e), the Burkes had to allege that they have suffered actual damages resulting from Ocwen's alleged violation of 12 U.S.C. 2605(e).  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 768 (N.D. Tex. 2012)("A plaintiff must allege actual damages resulting from a violation of § 2605."  The Burkes have failed to allege any specific damages "beyond their cursory claim that they have suffered

'millions'."  The Burkes point to no specific loss they have suffered stemming from 12 U.S.C. 2605(e).

### III.
### DISMISSAL WITH PREJUDICE

20.    The Court should deny Plaintiffs an opportunity to amend because any amendment to their pleadings would be futile.  *See SB. Intern., v. Jindal,* 2007 WL 2410007, * at 3 (N.D. Tex. Aug. 23, 2007)(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962));  *see also Abruzzo v. PNC Bank, N.A.,* 2012 WL 3200871, at *3 (N.D. Tex. July 30, 2012) (denying leave to amend with respect to claims that fail as a matter of law).  Plaintiffs' allegations do not give rise to a plausible cause of action against Ocwen.  Even if all facts alleged by Plaintiffs are assumed true, no viable cause of action exists against Ocwen as Plaintiffs have not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.   The claims of breach of contract against Ocwen are barred by the application of res judicata.   Further, the Original Complaint fails to present any factual allegations that would give rise to actionable conduct under RESPA against Ocwen.  As such, Plaintiff's claims against Ocwen should be dismissed with prejudice pursuant to Rule 12(b)(6).

### IV.
### PRAYER

Pursuant the reasons set out herein, Ocwen respectfully request that the Court dismiss Plaintiffs' Complaint against it for failure to state a claim upon which relief can be granted and further requests that the Court grant it any and all additional relief, whether at law or in equity, to which it may be justly entitled.

HOPKINS LAW, PLLC

By:    */s/ Mark D. Hopkins*    
        Mark D. Hopkins, *Attorney in Charge*
        State Bar No. 00793975
        Southern District ID No. 20322
        Shelley L. Hopkins
        State Bar No. 24036497
        Southern District ID No. 926469
        3809 Juniper Trace, Suite 101
        Austin, Texas 78738
        (512) 600-4320
        (512) 600-4326 Fax
        mark@hopkinslawtexas.com
        shelley@hopkinslawtexas.com

ATTORNEYS FOR OCWEN LOAN SERVICING, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, and will send a true and correct copy to the following:

**VIA CM/RRR #7015 1520 0001 3934 1811**
**and VIA EMAIL**
John Burke
46 Kingwood Greens Drive
Kingwood, Texas 77339

**VIA CM/RRR #7015 1520 0001 3934 1828**
**and VIA EMAIL**
Joanna Burke
46 Kingwood Greens Drive
Kingwood, Texas 77339

PRO SE PLAINTIFFS

        */s/ Mark D. Hopkins*    
        Mark D. Hopkins